**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| **BRYAN K. HODGES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CAUSE NO.: 1:05-CV-349** |
| | ) | |
| **JO ANNE B. BARNHART,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Bryan K. Hodges appeals to the district court from a final decision of the

Commissioner of Social Security ("Commissioner") denying Hodges's application under the

Social Security Act (the "Act") for Disability Insurance Benefits ("DIB"). (Docket # 1.)

Pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Northern

District of Indiana Local Rule 72.1(d)(1), District Judge Theresa Springmann referred the appeal

to the undersigned Magistrate Judge for the issuance of a Report and Recommendation. (Docket

# 22.)

Having reviewed the record, the undersigned Magistrate Judge recommends that the

Commissioner's decision be REVERSED and REMANDED for rehearing. This Report and

Recommendation is based on the following facts and principles of law.

### I. FACTUAL AND PROCEDURAL BACKGROUND[1]

Hodges filed a claim for DIB on October 31, 2002, alleging a disability onset date of

---

[1] The administrative record in this case is voluminous (282 pages), and the parties' disputes involve only small portions of it. Therefore, in the interest of brevity, this opinion recounts only the portions of the record necessary to the decision.

October 13, 2000. (Tr. 44, 53.) After his claim was denied initially and upon reconsideration,

Administrative Law Judge ("ALJ") Frederick McGrath conducted a hearing on November 10,

2004, and rendered an unfavorable decision on February 18, 2005. (Tr. 9-19.) The Appeals

Council denied Hodges's request for review. (Tr. 3-5.) Hodges filed here on October 3, 2005,

seeking review of the Commissioner's decision, and the matter is now fully briefed.

At the time of the ALJ's decision, Hodges was forty-eight years old. (Tr. 16.) He is a

high school graduate. (Tr. 50.) From 1979 until 2000, Hodges worked as a union electrician and

certified welder. (Tr. 57-59.) He claims he can no longer work due to ongoing pain associated

with a back injury suffered on May 31, 2000. (Tr. 44.)

## A. Medical History

Following his back injury, Hodges complained to Doctor Alan McGee, an orthopedic

surgeon, of back pain that radiated down his left buttock and leg. (Tr. 114.) An MRI of Hodges's

lumbar spine conducted on August 27, 2000, revealed a central disc extrusion and a mild disc

bulge. (Tr. 117.) After reviewing the MRI on September 6, Dr. McGee opined that Hodges

suffered from S1 radiculopathy and recommended a lumber discectomy, which was performed

on November 17. (Tr. 111-16.) On a follow-up visit to Dr. McGee one week later, Hodges

reported that although two days after his surgery his leg was "exceptionally well," his pain had

become progressively worse. (Tr. 109.) On December 13, Hodges reported that he still had

persistent leg pain but that he was better than he was before surgery. (Tr. 109.) Dr. McGee

opined that Hodges had persistent radiculitis.[2] (Tr. 109.)

---

[2] As a result of Hodges's complaints of increased pain on January 22, Dr. McGee ordered another MRI, which was negative for recurrent disk herniation. (Tr. 99-102.)

Because of Hodges's continued complaints of pain, Dr. McGee referred Hodges to Doctor Patrick Boylan. (Tr. 103.) Upon examination on January 5, 2001, Dr. Boylan observed that Hodges's gait was slightly antaligic, that he had difficulty with repetitive calf raises due to pain, that straight leg raises reproduced thigh pain, and that he had a mildly decreased range of motion. (Tr. 106.) Dr. Boylan administered an epidural steroid injection, which reportedly gave Hodges relief for only three days. (Tr. 102-05.)

Hodges returned to Dr. Boylan on February 7, complaining of persistent pain in his lower left limb. (Tr. 96.) Dr. Boylan noted that Hodges's gait was no longer antalgic and that he was able to walk on his heels and toes with some weakness in his toes. (Tr. 96.) He also observed that Hodges's calf raises were "a bit more difficult" on the left than the right but that Hodges did not experience any pain. (Tr. 96.) Hodges, however, did experience pain with flexion and extension of the spine, and he also had a positive slump test for pain all the way down to his ankle. (Tr. 96.) Dr. Boylan recommended that Hodges return for physical therapy, prescribed Neurontin, and set work restrictions. (Tr. 98.)

On March 7, Hodges reported to Dr. Boylan that the physical therapy was difficult but that he was slightly better. (Tr. 95.) Upon examination, Dr. Boylan noted that Hodges experienced pain with walking on heels and toes and with flexion and extension. (Tr. 95.) Dr. Boylan explained that residual symptoms can linger for several months after a disk herniation and prescribed OxyContin for the pain, recommending that Hodges use Vicodin and Ultram for breakthrough pain. (Tr. 95.)

Hodges returned to Dr. Boylan on April 18, reporting mild improvement. (Tr. 93.) Dr. Boylan observed that Hodges could walk on heels and toes without difficulty, that he had only a

3

mildly positive slump test, and that his lumbar range of motion was improving. (Tr. 93.) Dr.

Boylan recommended another epidural injection, which was performed on May 25. (Tr. 90-93.)

At Hodges's June 13 visit, he informed Dr. Boylan that the injection gave him only a few

days of relief and that he still has pain most days. (Tr. 89.) Noting that Hodges had only mild

improvement after surgery, pain medications, and physical therapy, Dr. Boylan recommended a

Functional Capacity Evaluation ("FCE"). (Tr. 89.) After the FCE, Dr. Boylan noted that Hodges

was restricted in the amount of weight he could lift, carry, push, and pull and that he could only

kneel and squat occasionally. (Tr. 88.) After discussing the results with Dr. Boylan, Hodges

elected to proceed with permanent work restrictions. (Tr. 88.) Dr. Boylan prescribed Darvocet

for Hodges's pain, advising him not to take it when working. (Tr. 88.)

On July 23, 2001, Doctor Phillip Johnson, Hodges's family practitioner, assumed

Hodges's pain management, diagnosing him with chronic low back syndrome and prescribing

Vicodin. (Tr. 168.) From July 2001 until March 2003, Hodges visited Dr. Johnson almost

monthly. (Tr. 128-68.) During this time, Dr. Johnson adjusted Hodges's medication regime

according to Hodges's complaints of pain and medication side effects. (Tr. 129, 131, 138, 151,

159.) At the October 24, 2001, appointment, Dr. Johnson diagnosed Hodges with chronic pain

syndrome.[3] (Tr. 164.)

In a form entitled "Statement of Medical Condition for the Food Stamp and the

Temporary Assistance for Needy Families Program" dated November 15, 2002, Dr. Johnson

opined that Hodges was totally unable to work. (Tr. 136.) Dr. Johnson also periodically reported

---

[3] Curiously, at this appointment Dr. Johnson did not note his earlier diagnosis of chronic low back
syndrome, and from this point on, Dr. Johnson seemingly used the two diagnoses interchangeably.

to Hodges's union that Hodges was unable to lift and that he was unable to determine when Hodges would be able to return to work. (Tr. 143, 146, 149, 169.)

Doctor Venkata Kancherla performed a consultative examination of Hodges on January 29, 2003. (Tr. 118-21.) Hodges complained that he had difficulty walking and that he could not sit or stand in one place due to his leg and back pain. (Tr. 118.) Dr. Kancherla observed that Hodges's straight leg test was forty degrees on the left and eighty degrees on the right, that he had radiculopathy, and that he had sensory impairments over the L5 S1 dermatones. (Tr. 120.) Dr. Kancherla also noted that Hodges had a history of anxiety, panic disorder, and depression, which were stable on medications. (Tr. 120.)

In a "Report of Contact" dated February 4, Hodges informed the State Agency that he has to rest twenty to thirty minutes after walking half a block, that he could not climb stairs due to pain, and that he developed stiffness with prolonged sitting. (Tr. 65.) He also indicated that although he could make his bed, do some dishes, and pick up around the house, his "fiancée"[4] did most of the cooking and cleaning. (Tr. 65.) In addition, he told the State Agency that he tended to his own self care but did not shower when he was alone. (Tr. 65.) Finally, he reported that the Paxil prescribed by his pain management doctor for anxiety and depression was helping, that the doctor had not recommended psychological treatment, and that he did not plan on seeking any treatment.[5] (Tr. 65.)

On February 6, State Agency physician Doctor A. Lopez reviewed the record and completed a Physical Residual Functional Capacity Assessment, opining that Hodges could lift

---

[4] Hodges assumes that this was an inaccurate reference to his landlord, Lou Ann Stahlhut.

[5] Hodges later informed the State Agency that Doctor Luis Lopez, a cardiologist, prescribed the Paxil; however, Dr. Lopez's medical files are not a part of this record. (Tr. 79.)

twenty pounds occasionally and ten pounds frequently, could stand and/or walk about six hours in an eight hour work day, could sit for about six hours, and had an unlimited ability to push and/or pull. (Tr. 185-92.) He also found that Hodges could occasionally climb, balance, stoop, kneel, crouch, and crawl. (Tr. 187.) State Agency physician Doctor F. Montoya later affirmed this opinion. (Tr. 28.)

On February 11, F. Kladder, PhD, conducted a psychiatric review on behalf of the State Agency, opining that Hodges's mental impairments were not severe and that they only mildly affected his ability to function. (Tr. 171, 181, 183.) Dr. Kladder also noted that Hodges alleged disability only for physical problems. (Tr. 183.) State Agency psychologist W. Shipley, PhD, later affirmed Dr. Kladder's opinion. (Tr. 28.)

In a "Reconsideration Disability Report" dated March 17, Hodges indicated that he was developing difficulties with anxiety and depression and that his physical symptoms were worsening. (Tr. 67.) Specifically, he reported that he was having difficulty putting on his shoes, socks, and pants; that he needed assistance when getting in and out of the shower; and that he was progressively becoming more dependent on assistance.[6] (Tr. 67.)

On March 31, Dr. Johnson completed a Medicaid form, opining that Hodges was significantly limited in walking, lifting, squatting, crawling, climbing, and reaching above his shoulders and was moderately limited in sitting, standing, pushing/pulling, bending, driving, doing repetitive leg movements, and completing normal housework. (Tr. 127.) On October 28, Dr. Johnson wrote on his prescription pad that Hodges was "unable to work due to his many

---

[6] On April 23, he further reported to the State Agency that because walking and sitting for long periods of time bothered him, most of his day was spent lying down. (Tr. 73.)

medical problems[;] his health problems are life long."[7] (Tr. 199.)

Dr. Johnson completed a "Medical Opinion RE: Ability to do Work Related Activities (Physical)" on June 9, 2004, again opining that Hodges was unable to work. (Tr. 231-34.) Specifically, Dr. Johnson found that Hodges could lift and carry less than ten pounds, could stand and walk less than two hours, and could sit less than two hours. (Tr. 231.) He also indicated that Hodges could sit for only fifteen minutes and could stand for only twenty minutes without changing positions and that he must walk around every fifteen minutes for ten minutes at a time. (Tr. 232.) He further opined that Hodges could never twist, stoop, crouch, and climb. (Tr. 232.)

Curiously, Dr. Johnson indicated on July 19 that an orthopedic evaluation revealed that Hodges was not significantly limited in sitting. (Tr. 196.) He also opined that Hodges was moderately limited in standing, as he could stand for thirty minutes at a time, and was also moderately limited in walking, as he could walk for sixty feet without stopping. (Tr. 196.) He indicated that Hodges was significantly limited in lifting and could lift twenty pounds "only several times in a row." (Tr. 196.) Finally, Dr. Johnson opined that Hodges was unable to bend, squat, climb, and do repetitive leg movements. (Tr. 196.)

## B. Administrative Hearing

At the hearing on November 10, 2004, Hodges, who was represented by counsel, testified that pain prevents him from working, specifically indicating that the pain starts on the left side of his lower back and travels down his leg, sometimes traveling to his right side. (Tr. 256.) He reported that the pain felt like someone was grinding a knife in his hip and that the bottom of his

---

[7] It is unclear to whom Dr. Johnson addressed this notation or for what purpose he rendered this opinion.

foot always feels like something is crawling on it. (Tr. 256.) Indicating that the only way for him

to relieve his pain is to lie down, Hodges testified that medications make the pain tolerable but

do not extinguish the pain. (Tr. 257, 259.) He also reported that the medications make him

drowsy and less alert and that he no longer drives as a result of these side effects. (Tr. 260.)

In addition, Hodges testified that most of his day is spent moving from his bed to a chair

in order to relieve his pain. (Tr. 262.) In fact, he stated that every movement he makes–even

breathing, coughing, and sneezing–causes him some degree of pain. (Tr. 264, 270.) He indicated

that he is unable to shower, get dressed, or do housework without the assistance of his landlord.[8]

(Tr. 263, 266-67.)

Regarding his mental impairments, Hodges testified that he takes Paxil for panic attacks

and depression. (Tr. 259.) He also reported that one of the side effects of his pain medication is

depression, indicating that it makes him cry and that it sometimes makes him feel like he

"want[s] it just to be over." (Tr. 259.)

Doctor Robert Barkhaus, a Vocational Expert ("VE"), also testified at the hearing. (Tr.

272.) The ALJ asked the VE a series of three hypotheticals, specifically asking if an individual

with varying degrees of limitations could perform work in the national economy. (Tr. 272-75.) In

each of these hypotheticals, the ALJ limited the individual to "simple, routine, repetitive tasks."

(Tr. 272-75.) The VE testified that an individual with these limitations could work as a sales

attendant, cafeteria attendant, cashier, electrical accessories assembler, electronics worker, small

products assembler, credit clerk, telephone clerk, and surveillance monitor. (Tr. 272-75.) Finally,

---

[8] In addition, Stahlhut testified at the hearing that "everything [Hodges] said was true and he's just getting worse." (Tr. 271.)

8

the ALJ asked the VE: "Did you assume in response to hypothetical one, two, and three that the

individual could meet all the physical and mental demands as described in the DOT for these

jobs?" (Tr. 276.) The VE replied, "Yes." (Tr. 276.)

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants the district court "the power to enter, upon the pleadings

and transcript of the record, a judgment affirming, modifying, or reversing the decision of the

[Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The

court's task is limited to determining whether the ALJ's factual findings are supported by

substantial evidence, which means "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). The

decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied

an erroneous legal standard.[9] *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the court reviews the entire administrative

record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or

substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner

are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212

(7th Cir. 2003). Nonetheless, "substantial evidence" review should not be a simple rubber-stamp

---

[9] Generally, a remand for further proceedings by the Commissioner is the appropriate remedy when an
ALJ's decision is not supported by substantial evidence. *Rohan v. Barnhart*, 306 F. Supp. 2d 756, 770 (N.D. Ill.
2004). On the other hand, an award of benefits is "essentially a factual finding best left for the [Commissioner] to
address in the first instance, unless the record can yield but one supportable conclusion." *Campbell v. Shalala*, 988
F.2d 741, 744 (7th Cir. 1993); *see also Briscoe v. Barnhart*, 524 F.3d 345, 356 (7th Cir. 2005); *Rohan*, 306 F. Supp.
2d at 770; *see generally Burroughs v. Massanari*, 156 F. Supp. 2d 1350, 1367-68 (N.D. Ga. 2001) (articulating that
the court may award DIB if "the Commissioner has already considered the essential evidence and it is clear that the
cumulative effect of the evidence establishes disability *without any doubt*") (emphasis added). Here, Hodges seeks
an award of benefits as an alternative form of relief; however, as will be shown *infra*, the record does not "yield but
one supportable conclusion." Therefore, an award of benefits is not appropriate.

of the Commissioner's decision. *Clifford*, 227 F.3d at 869.

### III. DISCUSSION

### A. Legal Framework

Under the Act, a claimant is entitled to DIB if he establishes an "inability to engage in

any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to . . . last for a continuous period of not less than 12

months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an

impairment that results from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C.

§ 423(d)(3).

In determining whether Hodges is disabled as defined by the Act, the ALJ conducted the

familiar five-step analytical process, which required him to consider the following issues in

sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a

severe impairment; (3) whether the claimant's impairment meets or equals one of the

impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the

claimant is unable to perform his past work; and (5) whether the claimant is incapable of

performing work in the national economy.[10] *See* 20 C.F.R. § 404.1520; *Dixon v. Massanari*, 270

F.3d 1171, 1176 (7th Cir. 2001). An affirmative answer leads either to the next step or, on steps

three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886

(7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads

---

[10] Before performing steps four and five, the ALJ must determine the claimant's residual functional
capacity ("RFC") or what tasks the claimant can do despite his limitations. 20 C.F.R. §§ 404.1520(e), 404.1545(a).
The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable
of. 20 C.F.R. § 404.1520(e).

to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

## B. The ALJ's Decision

In a written decision issued on February 18, 2005, the ALJ determined that Hodges was not disabled. (Tr. 12-19.) The ALJ decided in Hodges's favor on steps one and two, finding that Hodges's degenerative disk disease was severe, but also finding that he did not meet a listing at step three. (Tr. 18.) He then ascertained that Hodges had an RFC "to perform less than a full range of light work" and that he could perform "simple, routine, and repetitive tasks." (Tr. 18.) Based on this RFC, the ALJ found at step four that Hodges was unable to perform his past relevant work. (Tr. 18.) Relying on the testimony of the VE, the ALJ found at step five that Hodges was capable of performing work in the national economy, including work as an electrical assembler, electronics worker, and small products assembler. (Tr. 17-18.) Therefore, Hodges was not entitled to DIB. (Tr. 19.) In reaching this decision, the ALJ found that Dr. Johnson's evaluations were "not consistent with the record as a whole." (Tr. 15.) Furthermore, he concluded that Hodges's allegations regarding his limitations were not totally credible. (Tr. 18.)

Hodges argues that the ALJ improperly discredited his allegations of pain and failed to discuss Dr. Johnson's diagnosis of chronic pain syndrome. Hodges also contends that the ALJ failed to develop the record regarding his alleged mental impairments. Finally, Hodges argues that the ALJ erred in his step five determination when he found that Hodges could perform work in the national economy. Although Hodges's last two contentions are losing arguments, his first two provide a basis for remand.

**C. The ALJ's Determination That Hodges Is Not Credible Is Not Supported by Substantial**

**Evidence**

Because the ALJ is in the best position to evaluate the credibility of a witness, his

determination is entitled to special deference. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000).

If an ALJ's determination is grounded in the record, and he articulates his analysis of the

evidence "at least at a minimum level," *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988);

*Ottman v. Barnhart*, 306 F. Supp. 2d 829, 838 (N.D. Ind. 2004), creating "an accurate and

logical bridge between the evidence and the result," *Shramek v. Apfel*, 226 F.3d 809, 811 (7th

Cir. 2000), his determination will be upheld unless it is "patently wrong." *Powers*, 207 F.3d at

435; *see also Carradine v. Barnhart*, 360 F.3d 751,754 (7th Cir. 2004) (remanding an ALJ's

credibility determination because the ALJ's decision was based on "serious errors in reasoning

rather than merely the demeanor of the witness").

> Here, the ALJ offered the following explanation when discrediting Hodges:
>
> In considering [Hodges's] activities of daily living, the undersigned notes that the
> claimant lives alone; however, he states that he is progressively more dependent
> on assistance. Thus, the [ALJ] finds [Hodges's] allegations regarding his
> disability are not totally credible and are not supported by the objective medical
> evidence and his medical treatment history.

(Tr. 16 (internal citation omitted).) This credibility determination is deficient because the ALJ's

explanation lacked the detail necessary to enable the Court to trace the ALJ's path of reasoning.

*Schmidt v. Barnhart*, 395 F.3d 737, 746-47 (7th Cir. 2005) (noting that an ALJ is required to

"articulate specific reasons for discounting a claimant's testimony as being less than credible").

Specifically, the ALJ offered inadequate explanations when he discredited Hodges on the basis

of the objective medical evidence and Hodges's activities of daily living. Furthermore, the ALJ

failed to consider additional factors crucial to a credibility determination.

12

When rendering credibility determinations, "[a]n ALJ should consider elements such as objective medical evidence of the claimant's impairments . . . ." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006); *see also* 96-7p. Here, the ALJ opined that Hodges's allegations regarding his limitations "are not supported by the objective medical evidence and his medical treatment history"; however, he failed to cite to any medical evidence in the record to support his conclusion.[11] Therefore, the Court is unable to determine how the ALJ reached this conclusion. *See Wirth v. Barnhart*, 318 F. Supp. 2d 726, 743-44 (E.D. Wis. 2004) (remanding social security appeal when the ALJ made a conclusory statement that "the absence of medical evidence supporting the allegations of severe pain . . . further erode the claimant's credibility . . .").

In addition, the ALJ does not explain why Hodges's living alone and being progressively more dependent on assistance equates to a finding that Hodges is not credible.[12] Curiously, Hodges's testimony that is he becoming more dependant on assistance seemingly supports a finding that his allegations regarding the extent of his disability are credible, yet the ALJ uses this evidence to discredit Hodges. Accordingly, the ALJ's reasoning fails to build a logical bridge between the evidence of Hodges's daily activities and the results.[13]

---

[11] Hodges argues at length that the medical evidence supports his allegations of pain, while the Commissioner argues that there is substantial evidence in the record to support the ALJ's bald assertion regarding Hodges's credibility. It is inappropriate, however, for the Court to weigh evidence, to resolve conflicts in the record, and to decide questions of credibility. *See Clifford*, 227 F.3d at 869. Accordingly, this evidence is best explored by the ALJ on remand.

[12] Hodges claims that he does not live alone but instead shares an address and phone number with Stahlhut. The record is unclear regarding the nature of Hodges's living arrangements; accordingly, the subject is best explored on remand.

[13] The Court also notes that the Seventh Circuit has recently cautioned ALJs "against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home," since "[t]he pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment as well, often differ dramatically between home and office or factory or other place of paid work." *Mendez v. Barnhart*, 439 F.3d 360, 362-63 (7th Cir. 2006); *see also Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005) (emphasizing that

Finally, the ALJ failed to consider the following additional factors crucial to a credibility

determination:

> [1.] The location, duration, frequency, and intensity of the individual's pain or
> other symptoms;
> [2.] Factors that precipitate and aggravate the symptoms;
> [3.] The type, dosage, effectiveness, and side effects of any medication the
> individual takes or has taken to alleviate pain or other symptoms;
> [4.] Treatment, other than medication, the individual receives or has received for
> relief of pain or other symptoms;
> [5.] Any measures other than treatment the individual uses or has used to relieve
> pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20
> minutes every hour, or sleeping on a board);
> [6.] Any other factors concerning the individual's functional limitations and
> restrictions due to pain or other symptoms.

SSR 96-7p. Although the ALJ is not required to "analyze or elaborate on each of [these] factors,"

he should "discuss most of the factors and connect them to the credibility determination." *Wirth*,

318 F. Supp. 2d at 743. On remand, the ALJ would be well-advised to explore factors in addition

to the objective medical evidence and Hodges's daily activities.[14]

### D. The ALJ Erred by Failing to Mention Dr. Johnson's Diagnosis of Chronic Pain

### Syndrome

Hodges contends that the ALJ's failure to discuss Dr. Johnson's diagnosis of chronic pain

syndrome was legal error. When making an RFC determination, the ALJ must consider all of a

---

an ALJ must not casually equate household work with employment in the labor market); *Carradine*, 360 F.3d at 755
(remanding an ALJ's credibility determination when the ALJ failed "to consider the difference between engaging in
sporadic physical activities and [the claimant's] being able to work eight hours a day five consecutive days a week").
On remand, the ALJ should take care when using Hodges's daily activities as a basis for discrediting him,
particularly if Hodges is indeed living alone and has no one else to rely on.

[14] Hodges argues that these additional factors weigh in favor of his credibility; however, this determination
is best left to the ALJ on remand. *See Clifford*, 227 F.3d at 869.

claimant's medical impairments, regardless of their severity. *See* 20 C.F.R. §§ 404.1545(a)(2),

404.1545(e); *Wirth*, 318 F. Supp. 2d at 744. Chronic pain syndrome is a distinct medical

diagnosis that has both psychological and physical components. *See* drkoop.com: Health

Encyclopedia – Diseases and Conditions, http://www.drkoop.com/encyclopedia/93/629.html

(last visited Nov. 9, 2006) ("Chronic pain syndrome consists of chronic anxiety and depression,

anger, and changed lifestyle, all with a variable but significant level of genuine neurologically

based pain."). While the ALJ did not specifically list chronic pain syndrome as one of Hodges's

impairments, he did make mention of the physical (i.e., pain) and the psychological (i.e., anxiety,

depression) components of this disorder. The ALJ, however, did not discuss how these

components *in combination* affected Hodges's ability to function.

     Given that the physical and mental impairments resulting from chronic pain syndrome

"are so inextricably linked," the ALJ "must consider whether these impairments *taken together*

result in limitations." *Bates v. Apfel*, 69 F. Supp. 2d 1143, 1148-51 (N.D. Iowa 1999) (quoting

*Lester v. Chater*, 81 F.3d 821, 829-30 (9th Cir. 1995) (remanding case "for further consideration

of the evidence of chronic pain syndrome and the impact of that syndrome upon [the claimant's]

claim of disability"). On remand, the ALJ should specifically consider Dr. Johnson's diagnosis

of chronic pain syndrome and account for the interplay between the physical and mental

components of this disorder and how they effect Hodges. *See id.*; *Wirth*, 318 F. Supp. 2d at 745

("On remand, the ALJ should fully and fairly develop the record regarding . . . [the doctor's]

diagnosis of chronic pain syndrome."); *Neely v. Shalala*, 997 F.2d 437, 441 n.3 (8th Cir. 1993)

(remanding case because the ALJ did not fully develop two doctors' diagnoses of chronic pain

syndrome).

**E. The ALJ Was Under No Obligation to Order a Consultative Psychiatric Exam**

Hodges claims that the ALJ failed to develop the record regarding his mental impairments, specifically arguing that the ALJ should have ordered a consultative examination. Although an ALJ has a duty to develop a claimant's medical record, the claimant bears the initial duty to bring forth evidence supporting a finding of disability. 20 C.F.R. § 404.1512(a); *Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004); *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004). When a claimant is represented by counsel at the administrative hearing, the ALJ is entitled to presume that the claimant has advanced his best grounds for recovery. *Sears v. Bowen*, 840 F.2d 394, 402 (7th Cir. 1988). The ALJ has the discretion then to determine whether the evidence put forth by the claimant is adequate to decide the issue of disability or whether further consideration by a medical expert is required. *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (citing 20 C.F.R. § 404.1527(f)(2)(iii)); *see also* 20 C.F.R. § 404.1512(f). "[B]ecause it is always possible to identify one more test or examination an ALJ might have sought, the ALJ's reasoned judgment of how much evidence to gather should generally be respected." *Flener*, 361 F.3d at 448.

Here, the ALJ was under no obligation to further develop the record by ordering  a consultative psychiatric examination. Hodges did not allege any mental health impairments in his initial disability report and also indicated later that Paxil was effective in treating his anxiety and depression, that his doctor had not recommended psychological treatment, and that he did not plan on seeking any treatment. After relaying a history of anxiety and depression to Dr. Kancherla at the consultative physical exam, a State Agency psychologist conducted a review of the record and determined that Hodges's mental impairments were not severe. On this record, the

16

evidence was adequate for the ALJ to determine that no further psychiatric testing was necessary

and that Hodges's mental impairments "only mildly limited his ability to function." (Tr. 14); *see*

*Skarbek*, 390 F.3d at 504; *Flener*, 361 F.3d at 448.

Furthermore, although Hodges complains that there are few details in the record

regarding his mental impairments, his counsel did not take the opportunity at the administrative

hearing to more fully develop the record by questioning Hodges about his psychiatric problems.

In addition, Hodges never requested a psychiatric consult, nor did he visit a psychiatrist on his

own accord. Only at this late stage does Hodges put his psychiatric problems at issue. Even now,

he fails to point to "any *specific* facts that could have been discovered by an additional

examination." *Lawson v. Apfel*, No. IP 99-1112-C H/G, 2000 WL 683256, at *8 (quoting *Binion*

*v. Shalala*, 13 F.3d 243, 246 (7th Cir.1994)) (emphasis added) ("Mere conjecture or speculation

that additional evidence might have been obtained in the case is insufficient to warrant a

remand."). Accordingly, Hodges did not fulfill his duty to bring forth evidence regarding any

disabling mental conditions, and the ALJ was entitled to presume that Hodges advanced his best

grounds for recovery. *See Flener*, 361 F.3d at 448; *Sears*, 840 F.2d at 402.

### F. Hodges's Step Five Argument Comes Too Late

Finally, Hodges argues that the ALJ erred in his step five determination when he found

that Hodges could perform work in the national economy. Specifically, Hodges questions the

ALJ's reliance on the VE's testimony when making his step five determination, arguing that the

VE incorrectly testified that the jobs he listed were consistent with the DOT definitions of simple

and routine tasks. Hodges contends that the ALJ cannot rely on the VE's erroneous testimony as

substantial evidence at step five..

An ALJ has an affirmative duty under SSR 00-4p to ask the VE whether his testimony is consistent with the DOT. *Prochaska v. Barnhart*, 454 F.3d 731, 735-36 (7th Cir. 2006). Furthermore, SSR 00-4p "requires the [ALJ] to '[e]xplain [in the] determination or decision how any conflict [with] the [DOT] that *has been identified* was resolved.'" *Greenwood v. Barnhart*, 433 F. Supp. 2d 915, 930 (N.D. Ill. 2006) (quoting *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002); SSR 00-4p) (emphasis in original). Here, the ALJ met his duty of inquiry by questioning the VE whether "the [hypothetical] individual could meet all the physical and mental demands as described in the DOT for these jobs[.]" (Tr. 276.) In response, the VE did not indicate that there were any inconsistencies between his testimony and the DOT definition. "Because no discrepancies were brought to the ALJ's attention [at the hearing], the ALJ was not required to resolve any." *Greenwood*, 433 F. Supp. 2d at 930. Accordingly, the ALJ was entitled to rely on the VE's testimony when making his step five determination, even if the VE's representations were not consistent with the DOT. *Id.* at 930-31.

Ultimately, if Hodges's attorney believed that there were any discrepancies, he should have posed these questions to the VE at the hearing. *Id.* at 930. By waiting until these proceedings to raise the issue, Hodges has effectively waived his argument. *See Donahue*, 279 F.3d at 446-47. Accordingly, the Court need not engage in any further discussion regarding whether the ALJ's job listings for an individual limited to simple and routine tasks were consistent with DOT definitions.

## IV.  CONCLUSION

Although the ALJ committed no legal error by not ordering a consultative psychiatric exam and by relying on the VE's testimony, he improperly evaluated Hodges's credibility and

18

failed to consider Dr. Johnson's diagnosis of chronic pain syndrome. Because a thorough evaluation of Hodges's pain allegations are crucial to his claim of disability, the undersigned Magistrate Judge recommends that the Commissioner's decision be REVERSED and REMANDED for rehearing.

The Clerk is directed to send a copy of this Report and Recommendation to counsel for the parties. NOTICE IS HEREBY GIVEN that within ten days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER. *See* N.D. Ind. L.R. 72.1(d)(2); *see also Thomas v. Arn*, 474 U.S. 140 (1985); *Lerro v. Quaker Oats Co.*, 84 F.3d 239, 241-42 (7th Cir. 1996).

SO ORDERED.

Enter for this 13th day of November, 2006.

S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge